IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES JACKSON,
    Plaintiff,

vs.                                    Case No.: 3:07cv67/LAC/EMT

D. ELLIS, et al.,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

    This cause is before the court on Plaintiff's fourth amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 38). Leave to proceed in forma pauperis has been granted (Doc. 18).

    Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp. v. Twombly, No. 05-1126, 2007 WL 1461066, at *10–*11, *14 (May 21,

2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the complaint, the court concludes that dismissal of several Defendants and several of Plaintiff's claims is warranted.

Plaintiff, an inmate of Santa Rosa Correctional Institution (SRCI), names ten Defendants in this action: Warden D. Ellis, Assistant Warden A. Haskins, Assistant Warden C. Henderson, Grievance Coordinator G. Davis, Food Service Director A. Brown, Chaplain Williams, Chaplain Reeves, Chaplain Endress, Chaplain Augustine, and the Florida Department of Corrections (DOC) (Doc. 38 at 1–2). Plaintiff alleges that Chaplains Williams, Reeves, Endress, and Augustine discriminated against him and other Muslim inmates by refusing to supply Muslim reading material and designate Muslim meals or menus like they do for Jewish inmates (*id*. at 5–6). Plaintiff alleges that Chaplain Williams denied Plaintiff's request for reading material and Muslim meals on the ground that the Chaplain's Department is not required to order or request Muslim reading materials from Islamic organizations; instead, it is the Muslim inmates' responsibility to obtain their own religious reading material (*id*. at 6). With regard to designating and providing Muslim meals, Plaintiff alleges that Chaplain Williams denied Plaintiff's request for special meals on the ground that the DOC does not recognize a special Muslim religious diet because Muslims are able to meet their religious diet through a vegan or alternate meal menu (*id*.). Plaintiff states that Chaplain Williams did not refuse Jewish inmates' requests for the same things that Plaintiff requests (*id*.). Plaintiff states that Islamic reading material and Islamic meals are required by the Holy Quran, his religious textbook (*id*. at 7).

Plaintiff alleges that he filed informal grievances, but Assistant Warden Haskins and Food Service Coordinator Brown failed to respond (Doc. 38 at 5). Additionally, he filed formal grievances, but Warden Ellis did not respond to the grievances, and Assistant Warden Henderson and Grievance Coordinator Davis failed to inform Warden Ellis about the alleged discrimination, even though they knew that it was occurring (*id*.). Plaintiff alleges he appealed to the Central Office of the DOC, but he has not received a response (*id*. at 6).

Plaintiff claims that Defendants' conduct violated his First Amendment right to freely exercise his religion, as well as his Fourteenth Amendment right to equal protection (Doc. 38 at 7). As relief, he appears to seek an injunction enjoining Defendants from further discrimination against Muslim inmates (*id.*).

Initially, Plaintiff has failed to state a claim under the First Amendment or RLUIPA. "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 1974); Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). A prisoner's right to exercise his religion is not absolute; it is only required that he be accorded a reasonable opportunity to pursue his religion. Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972) (per curiam). Thus, while inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining safety and order. O'Lone v. Estate of Shabazz, 482 U.S. 342, 345, 107 S. Ct. 2400, 2402, 96 L. Ed. 2d 282 (1987); Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); Cruz, 405 U.S. at 322, 92 S. Ct. at 1081. The Supreme Court held in Turner that when a prison regulation or policy impinges upon an inmate's constitutional rights, the policy is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89–91, 107 S. Ct. at 2261–63; Pope v. Hightower, 101 F.3d 1382, 1384 (11th Cir. 1996). Prison administrators should be given great deference in adopting and executing policies and practices. Pope, 101 F.3d at 1384. Absent substantial evidence in the record indicating that officials exaggerated their response to considerations of order, discipline, and security, courts ordinarily should defer to their judgment. *See* Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979); *see also* McCorkle v. Johnson, 881 F.2d 993 (11th Cir. 1989).

In a First Amendment free exercise challenge, prior to considering the reasonableness of a regulation, as set forth in Turner, the court must first determine whether an infringement has occurred, specifically, whether the inmate has been substantially burdened in practicing his religion. Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995). The Supreme Court has held that

> [w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

Employment Div., Dept. of Human Res. of Ore. v. Smith, 494 U.S. 872, 878–82, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). *See also* Lyng v. NW Ind. Cemetery Protective Ass'n, 485 U.S. 439, 450, 108 S. Ct. 1319, 99 L. Ed. 2d 534 (1988) ("[I]ndirect coercion or penalties on the free exercise of religion, not just outright prohibitions, are subject to scrutiny under the First Amendment.") (citations omitted); Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141, 107 S. Ct. 1046, 94 L. Ed. 2d 190 (1987) (quoting and reaffirming Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981)).  In Thomas, the Supreme Court held that a "substantial burden" is one that "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Thomas, 450 U.S. at 718.  This burden must be more than inconsequential.  *See* Smith, 494 U.S. at 878–82; Walsh v. La. High School Athletic Ass'n, 616 F.2d 152, 158 (5th Cir. 1980).  Thus, to find a Free Exercise violation in the prison context, a plaintiff must demonstrate that prison officials employed a policy or engaged in conduct not reasonably related to any legitimate penological interest or security measure, which substantially burdens a practice of his religion or prevents him from engaging in conduct or having a religious experience which the faith mandates.  This interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs.  *Cf.* Thornburgh v. Abbott, 490 U.S. 401, 418, 109 S. Ct. 1874, 1884, 104 L. Ed. 2d 459 (1989) (noting that O'Lone found prison regulations valid in part because the prisoners were permitted to participate in other Muslim religious ceremonies).

Free exercise claims may also be brought under RLUIPA.  RLUIPA expressly provides for a private right of action for individuals whose religious exercise is unlawfully burdened while incarcerated in prison.  *See* 42 U.S.C. § 2000cc-2.  Accordingly, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against

a government." *Id.* § 2000cc-2(a). RLUIPA provides a standard of review less deferential to prison officials:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)–(2); *see also* Cutter v. Wilkinson, 544 U.S. 709, 720 (2005) (upholding the constitutionality of RLUIPA).

RLUIPA does not define "substantial burden"; however, many circuits have adopted the substantial burden standard employed in the First Amendment free exercise area. In Midrash Sephardi, the Eleventh Circuit, in a land use case as opposed to an incarcerated persons case, explained what is meant by "substantial burden:"

> a "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

Midrash Sephardi. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004); *see also* Konikov v. Orange County, Fla., 410 F.3d 1317, 1323 (11th Cir. 2005) (utilizing the same standard and citing Midrash Sephardi with approval). The interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs. *See* Cheffer, 55 F.3d at 1522; *see also* Adkins v. Kaspar, 393 F.3d 559, 569–70 (5th Cir. 2004) (explaining that a " 'substantial burden' . . . pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."); San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004) (defining substantial burden as "oppressive" and "a significantly great restriction or onus upon [religious] exercise"); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003) (holding that a substantial burden "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable"). Accordingly, in both a First Amendment free exercise and RLUIPA challenge, the burden is first on Plaintiff to establish that his ability to freely exercise his religion

has been substantially burdened by Defendants. *See, e.g.*, Midrash Sephardi, 366 F.3d at 1225 (plaintiff bears burden of showing substantial burden on religious practice before invoking protections of RLUIPA); Levitan v. Ashcroft, 281 F.3d 1313, 1320–21 (D.C. Cir. 2002) (same); Cheffer, 55 F.3d at 1522; 42 U.S.C. § 2000cc-2(b).

In the instant case, Plaintiff does not allege, nor do the facts suggest, that Defendants' failure to supply Muslim reading material or failure to designate a special diet for Muslims places a substantial burden on his religious practice. For example, Plaintiff does not allege that he is unable to obtain Muslim reading material on his own, or that he is unable to satisfy the Muslim dietary requirements by requesting a vegan or other meal supplied by the DOC. Therefore, Plaintiff's claims under the First Amendment and RLUIPA should be dismissed.

Additionally, Plaintiff has failed to state an equal protection claim as to several Defendants. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, gender, or religion. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks omitted). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). Plaintiff must also allege Defendants acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E&T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, with regard to Plaintiff's claim concerning religious meals, Plaintiff does not allege, nor do the facts suggest, that Jewish inmates are similarly situated to Muslim inmates with regard to their ability to meet religious dietary requirements by choosing from other menus

provided by the DOC.  For example, he does not allege that Jewish inmates are able to meet their religious dietary requirements by choosing vegan or "alternate" menus; nor does he allege that he is unable to meet his religious dietary requirements by choosing other menus.  Because Plaintiff has failed to make a threshold showing that he was treated differently from others who were similarly situated to him, his equal protection claim regarding religious meals should be dismissed.

Furthermore, Plaintiff has failed to state a plausible equal protection claim against Warden Ellis, Assistant Warden Haskins and Food Service Director Brown with regard to supplying religious reading material.  As Plaintiff was previously advised (*see* Doc. 35), supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v.

Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff alleges only that he filed grievances with Warden Ellis, Assistant Warden Haskins, Food Service Director Brown, and the Central Office of the DOC, and the grievances were not answered. This fact alone is insufficient to show a causal connection between these Defendants and the alleged discriminatory provision of reading material. Plaintiff does not allege facts showing that there was a history of widespread abuse that put these Defendants on notice of the discriminatory provision of reading material, and they failed to do correct it, that a custom or policy of any of these Defendants resulted in discrimination with regard to reading material, or that any of these Defendants directed their subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Id.* Therefore, Plaintiff's equal protection claims against Warden Ellis, Assistant Warden Haskins, Food Service Director Brown, and the DOC regarding the failure to supply Muslim reading material should be dismissed.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff's First Amendment and RLUIPA against all Defendants be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), failure to state a claim upon which relief may be granted.

2. That Plaintiff's equal protection claims against all Defendants regarding the failure to provide Muslim meals be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

3. That Plaintiff's equal protection claims against Warden Ellis, Assistant Warden Haskins, Food Service Director A. Brown, and the Florida Department of Corrections regarding the failure to supply Muslim reading material be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

4. That the following Defendants be dismissed form this lawsuit: Warden Ellis, Assistant Warden Haskins, Food Service Director A. Brown, and the Florida Department of Corrections.

5. That this matter be remanded to the undersigned for further proceedings on Plaintiff's equal protection claims against Chaplain Williams, Chaplain Reeves, Chaplain Augustine, Chaplain Edress, Assistant Warden C. Henderson, and Grievance Coordinator G. Davis, regarding the failure to supply Muslim reading material.

At Pensacola, Florida, this 4th day of December 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.:  3:07cv67/LAC/EMT