IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES JACKSON,
    Plaintiff,

v.                                      Case No. 3:07cv67/LAC/EMT

D. ELLIS, et al.,
    Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

Plaintiff James Jackson ("Jackson") proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983. Presently before the court is the motion for summary judgment filed by Defendants Williams, Reeves, Endress, Augustine, Henderson, and Davis (Doc. 84). Jackson has not responded. For the reasons stated below, the court recommends that the motion for summary judgment be granted.

**Background**

Jackson, an inmate who was incarcerated at Santa Rosa Correctional Institution ("SRCI") at the time the events at issue in this case took place, initiated the action by filing a civil rights complaint on February 2, 2007 (Doc. 1).[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). In

---

[1] Jackson filed the original and the first amended complaints as co-Plaintiff with a fellow SRCI inmate, Jeffery Gissenter, who was later dismissed from the action for failing to comply with an order of the court (Doc. 27). This dismissal left Jackson as the sole Plaintiff. Although the parties and the court have identified the style of this case as "James Jackson v. D. Ellis" in numerous previous documents, the electronic docket continues to reflect the original style, *i.e.,* "Jeffery Gissenter v. D. Ellis." The clerk shall therefore be directed to change the docket at this time to make it consistent with the style of the case as it is shown in this Report and Recommendation.

the Fourth Amended Complaint (Doc. 38), which is the operative pleading in this case, Jackson asserts that SRCI prison officials discriminated against him and other Muslim inmates by refusing to supply them with Muslim reading materials or to offer them a special Muslim diet, both of which services Jackson asserts were provided to Jewish inmates at the facility. As relief, Jackson appears to seek an order enjoining Defendants from further discrimination against Muslim inmates (*id*. at 8). Jackson names as Defendants in this action SRCI Chaplains Williams, Reeves, Endress, and Augustine; Assistant Warden C. Henderson; and Grievance Coordinator G. Davis, along with four other Defendants (Doc. 38 at 1–2). The district court dismissed the latter four Defendants from the case in its January 7, 2008, order (Doc. 46), adopting this court's Report and Recommendation dated December 4, 2007 (Doc. 43). In accordance with the district court's order, Jackson's claims pursuant to the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*., have been dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief. Jackson's additional claim that the Equal Protection Clause of the Fourteenth Amendment was violated by the failure to provide special meals to Muslim inmates was likewise dismissed. The only claim remaining (and the only one to which Defendants have been required to respond (Doc. 63)) involves Jackson's contention that Defendants Williams, Reeves, Endress, and Augustine—with the knowledge of Defendants C. Henderson and G. Davis—violated the right to equal protection by failing to supply Muslim inmates with Muslim religious materials, although Jewish inmates were given materials central to their faith.

In their motion for summary judgment, filed October 23, 2008, Defendants urge that neither Jackson nor any other Muslim inmate at SRCI has suffered a violation of the right to equal protection in connection with the provision of religious reading materials. According to Defendants, the Florida Department of Corrections ("FDOC") does not purchase religious literature for distribution to inmates; rather, all such materials are donated by private or other non-FDOC sources. Defendants submit that if there is any inequality regarding the quantity or nature of religious materials received and distributed to inmates of various faiths, the disparity is attributable to the demographics of the general civilian population which makes the donations, not to any intentional discrimination by Defendants. In support of this contention, which is reiterated in their statement of undisputed facts (Doc. 84 at 5), Defendants have supplied the affidavit of Alex Taylor, Chaplaincy Services

Administrator for the FDOC (*id.*, Exh. A).

Following the filing of Defendants' motion for summary judgment, by order dated December 3, 2008, the court informed Jackson of the procedural rules and legal standard governing summary judgment motions and directed him to file an appropriate response within thirty days (Doc. 85).[2] Jackson failed to comply with the court's order.[3]

**Legal Standards**

    Summary Judgment

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has submitted no evidence to support his case or they must present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. Anderson, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

---

[2] Due to Jackson's pro se status the court is required to construe his pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). It does so here. Pro se litigants are required to follow the same procedural rules as other litigants, however, a standard which the court likewise applies to Jackson. *See* Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). *See also* Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999); GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

[3] On December 22, 2008, Jackson filed a "Motion for Summary Judgment" and "Motion for Sworn Affidavits," but the court instructed the clerk to return these documents to him without filing due to various procedural deficiencies (Doc. 86). As it had done in its December 3, 2008, order, the court in its subsequent order again cautioned Jackson about the consequences of failing to present evidence in opposition to a summary judgment motion (*id.*). It also advised Jackson regarding the submission of sworn affidavits, including how to proceed if the affidavits of certain witnesses were temporarily unavailable (*id.*). Despite receiving these instructions, Jackson made no further attempts to respond to Defendants' motion for summary judgment.

When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

Equal Protection

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, gender, or religion. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001)

(internal quotation marks omitted). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). Plaintiff must also allege Defendants acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E&T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

**Discussion**

As an initial matter, the court notes that on May 30, 2008, Jackson filed a notice of change of address advising that he had been transferred to Florida State Prison, a FDOC facility located in Raiford, Florida (Doc. 73). Although Defendants do not raise the issue, Jackson's instant equal protection claim, as to which he seeks only injunctive relief, may have been rendered moot by his transfer. The Eleventh Circuit has noted the general rule in this circuit is that a prisoner's transfer to another facility will moot the prisoner's claims for injunctive and declaratory relief. Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) (citing McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984), and Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986) (per curiam)). *See also* Herron v. Beck, 693 F.2d 125, 127 n.3 (11th Cir. 1982) (noting that an inmate's transfer to a different prison may moot his claims for equitable relief against the practices at the facility where the claims arose).[4] A case may become moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 n.10, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982). In this case, Jackson asserts that Defendants have engaged in or sanctioned the disparate distribution

---

[4] As the Eleventh Circuit has explained, this rule is grounded on the principle that injunctive relief is "a prospective remedy, intended to prevent future injuries." Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). Accordingly, once the inmate has been transferred, the court is unable to grant injunctive relief and correct the conditions of which the prisoner complained. *See*, *e.g.*, Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) (stating that a prisoner's past exposure to sub-par conditions in a prison "does not constitute a present case or controversy involving injunctive relief"). Transfer does not, however, moot a claim for monetary damages because such a claim "looks back in time and is intended to redress a past injury." McKinnon, 745 F.2d at 1362.

of religious reading materials to Muslim inmates "here at Santa Rosa [Correctional Institution]" (Doc. 38 at 6). As noted, subsequent to filing his Fourth Amended Complaint, Jackson was transferred to Florida State Prison, where he is presently housed. To the extent the specific conduct alleged by Jackson in the Fourth Amended Complaint is limited to events that took place at SRCI and thus could not reasonably be expected to recur at Florida State Prison, Jackson's equal protection claim appears to be moot.

The court recognizes that, to the extent the FDOC's policies and regulations regarding the distribution of religious reading materials to inmates are effective statewide, Jackson's equal protection claim may not have been mooted by his transfer.[5] The court nevertheless concludes that summary judgment should be granted to Defendants. As previously noted, Jackson has not filed a response to Defendants' motion for summary judgment or submitted a statement of disputed material facts in opposition to Defendants' statement of undisputed facts. Accordingly, pursuant to the local rules of this district, all material facts set forth in Defendants' statement of undisputed facts are deemed admitted. *See* N. D. Fla. Loc. R. 56.1(A) (stating that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party). These facts, taken largely verbatim from Defendants' statement of undisputed facts (Doc. 84 at 5–6), and supported by Chaplain Taylor's affidavit (*id.* at Exh. A), are as follows[6]:

1. The FDOC does not purchase religious literature for inmates and, under its reading of the pertinent regulations, is not required to make such purchases.
2. The FDOC accepts donations of religious literature from religious groups outside the institution which are made available to inmates either personally or in the chapel.
3. The denominational background of donated religious materials is determined strictly by the demographics of the outside population.
4. The FDOC does not refuse donations of religious literature from any one religious

---

[5] *See* Smith, 502 F.3d at 1267 (finding that inmate plaintiff's claim for injunctive relief under RLUIPA was no longer moot due to his reincarceration in the state penal system, where he was once again subject to the same restrictions that had initially precipitated his lawsuit).

[6] The court includes in this recitation only factual matters, deleting any conclusions of law that—in its view—Defendants included in their statement of undisputed facts.

denomination because similar donations are not available from other denominations.

Viewing the evidence in the light most favorable to Jackson, as it must, *see* Hairston, 9 F.3d at 918, the court concludes that Defendants have met their initial summary judgment burden because they have successfully negated an essential element of Jackson's equal protection claim; in fact, Defendants have negated both elements of the claim. *See* Celotex Corp., 477 U.S. at 322–23; Jones v. Ray, 279 F.3d at 946–47 (identifying elements of equal protection claim as requiring an inmate to demonstrate (1) that he is similarly situated with other prisoners who received more favorable treatment and (2) that the allegedly discriminatory treatment was based on a constitutionally protected interest). In its analysis the court assumes, *arguendo*, that with respect to the distribution of religious reading materials Jackson was similarly situated to other inmates at SRCI, indeed to other inmates within the FDOC. Chaplain Taylor's unrefuted affidavit supports the conclusion, however, that Jackson was treated no differently than were any other FDOC inmates in connection with the availability of religious literature. To the contrary, Jackson was subject to the same consideration as were inmates of other faiths, including Jewish inmates (and, for that matter, Christian inmates, the majority group) (*see* Doc. 84, Exh. A at ¶¶ 2, 4, 9). The FDOC purchases no religious literature whatsoever for inmates of any denomination; rather, all religious reading materials are donated by outside sources. No donations are refused. The donated materials correspond—in terms of quantity and type—with the demographics of the community, which is predominantly Christian (*id.*). These facts, which Jackson is deemed to have admitted as true for purposes of the court's summary judgment review, suggest not only that Jackson did not suffer disparate treatment but also that Defendants did not act with the intent to discriminate against him in their distribution of religious reading materials at SRCI.

Because Defendants have met their initial summary judgment burden, Jackson is now required to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex Corp., 477 U.S. at 322–23. Jackson, who as noted did not respond to the motion for summary judgment, *see* Wayne, 197 F.3d at 1104 (requiring pro se litigants to comply with federal procedural rules and local court rules), has failed entirely to satisfy his burden. Accordingly, Defendants are entitled to summary judgment in their favor on Jackson's claim that the Equal Protection Clause was violated by the disproportionate distribution of religious reading materials to

Muslims.[7] *See* <u>Anderson</u>, 477 U.S. at 247 (reiterating that a properly supported motion for summary judgment which satisfies the requirement that no genuine issue of material fact exists must be granted).

**Conclusion**

Upon consideration of Jackson's equal protection claim and the evidence submitted, the court recommends that Defendants' motion for summary judgment be granted.

Accordingly, it is **ORDERED:**

The clerk shall alter the docket to reflect that the style of this case is "James Jackson v. D. Ellis," as shown in this Report and Recommendation**.**

And it is respectfully **RECOMMENDED**:

1. That Defendants' motion for summary judgment (Doc. 84) be **GRANTED**.
2. That the clerk enter final judgment in favor of all Defendants.

At Pensacola, Florida this <u>16th</u> day of July 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] As a final matter, the court notes that in their answer to the Fourth Amended Complaint (Doc. 81), Defendants assert their entitlement to qualified immunity on Jackson's equal protection claim, a defense they do not pursue in their motion. Jackson does not specify in the Fourth Amended Complaint whether he sues Defendants in their official or individual capacities—or both—but, given the nature of his allegations and his demand for relief, the court concludes that he proceeds against Defendants in their official capacities only. The Eleventh Circuit has noted that unless there is an allegation of individual capacity liability for damages, a government employee need not raise, and the court need not address, the qualified immunity defense. <u>Smith</u>, 502 F.3d at 1272, n.8 (quoting <u>Smith v. Haley</u>, 401 F. Supp. 2d 1240, 1246 (M.D. Ala. 2005)). Accordingly, the court is not obliged to consider further the issue of Defendants' entitlement to qualified immunity. Nevertheless, in an abundance of caution, the court notes that insofar as Jackson's claim and vaguely stated demand for relief might arguably be read as seeking relief from Defendants in their individual capacities, because Jackson has failed to show an equal protection violation, Defendants should be entitled to qualified immunity. *See* <u>Gray ex rel. Alexander v. Bostic</u>, 458 F.3d 1295, 1303 (11th Cir. 2006) (noting that "[q]ualified immunity offers a complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks omitted).

Case No. 3:07cv67/LAC/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** <u>**United States v. Roberts**</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**